[Civ. No. 6640.   Third Dist.   Jan. 11, 1943.]

ALFRED J. OLMO, Appellant, v. THOMAS M. OLMO, Respondent.

Lloyd J. Cosgrove, James M. Hanley and Herbert Chamberlin for Appellant.

Peter tum Suden and Richard tum Suden for Respondent.

HAWKINS, J. pro tem.—Since a rehearing was granted in this case, additional evidence has been presented to this court in the form of an exhibit attached to the referee's report which casts new light upon one phase of the case and makes necessary some modification of our original opinion. For this reason, the original opinion of this court is adopted with certain modifications, as follows:

This is an appeal from a judgment in favor of respondent upon his cross-complaint in an action for dissolution of a partnership known as Olmo Bros. Draying Co.

As grounds for reversal, appellant makes the following claims:

1. That certain partnership assets were not converted into cash, and a debt found by the trial court to be due to the mother òf the parties hereto was not paid, and therefore a personal judgment could not be rendered against one of the partners.

2. That the court erroneously found that the partnership was commenced on July 1, 1929, instead of July 1, 1934, as claimed by appellant.

3. That appellant was relieved of liability by a written release dated July 1, 1934, which release was erroneously set aside by the court for fraud alleged in its procurement.

4. That an illegal method of accounting was adopted by the referee, that he failed to charge respondent for $2,000 paid him for the alleged fraudulent release, and that the accounting extended back only to October 10, 1929, while the court found that the partnership commenced on July 1, 1929.

5. That the evidence will not support certain findings of fact, and the findings of fact will not support the judgment.

Both appellant and respondent, by their pleadings, asked for a dissolution and an accounting, so no issue was raised on those questions.

The essential facts are these:

Appellant and respondent, who are brothers, formed a partnership on July 1, 1929. This partnership continued without interruption until sometime in May, 1932. At that time appellant told respondent that there were no profits in the business, and that he was going to withdraw, and thought he would leave San Francisco, where the partnership business was, and go to Los Angeles. In the preceding April, however, he had filed a certificate with the county clerk in San Francisco, stating that he was doing business individually under the name of Olmo Bros. Draying Co. Appellant claims that at that time respondent abandoned his interest in the partnership and voluntarily turned it over to appellant.

Contrary to appellant's statement, there had been some profits in the business, but respondent had left the bookkeeping to his brother and did not know much about that end

of the business. He continued to work with appellant, drawing a salary of $150 per month. Appellant also drew a salary from the business.

Notwithstanding his statements, appellant did not leave San Francisco, but continued to operate the business with his brother as before. In April or May, 1934, respondent being in urgent need of funds, requested appellant to advance him some money from the partnership. Then for the first time, the partners quarreled over money matters, appellant claiming that respondent had no interest in the business.

The business was conducted from the family dwelling house, where the partners lived with their mother and the rest of the family, including an adult sister, Laura, who for some time kept the books of the partnership. Many discussions of the business were held with the whole family participating. Appellant never told any of the members of his family that he had dissolved partnership with his brother, until April or May, 1934. At this time Laura Olmo accused appellant of withdrawing large sums of money from the partnership for his own personal benefit, and in particular one check for $5,000 for which he made a stub marked only with five crosses. The check book with the questioned stub subsequently disappeared. Also, pages were torn out of other books, and certain partnership books and papers completely vanished. Appellant offered an explanation of the $5,000 check which proved to be false.

Notwithstanding the fact that appellant claimed respondent had no interest in the partnership, he offered to pay him $5,000 for his purported interest. At this time respondent was suspicious of the $5,000 withdrawal but did not have definite information that appellant had appropriated it. What he did not know was that at the very time negotiations were pending, appellant had withdrawn an additional $3,000 and placed it in his personal savings account.

The negotiations culminated in a written agreement of settlement effective as of July 1, 1934, whereby respondent retained a half-interest in the partnership, was paid $2,000 in cash, and released appellant from all prior claims and demands. Appellant and respondent thereafter operated the business together until January 14, 1935. At that time respondent got into a personal difficulty having no connection with the business, and went into hiding for three months. Appellant thereupon brought this action.

The partnership owned some trucks which respondent asserts were sold for storage charges, but there is no evidence to that effect.

The first ground for reversal claimed by appellant is meritorious. No personal judgment can be rendered by one partner against the other until all the assets have been collected and all the property sold and converted into cash. (*Clark* v. *Hewitt,* 136 Cal. 77 [68 P. 303].) No personal judgment can be rendered against a partner until all of the partnership debts are paid. (*Nakamura* v. *Kondo,* 65 Cal.App. 211 [223 P. 425]; *Albery* v. *Geis,* 1 Cal.App. 381 [82 P. 262].)

Respondent maintains that there was no finding that there was a debt due from the partnership to the mother. The answer alleged that:

"The plaintiff and defendant are obligated to their mother . . . for moneys advanced the copartnership, but that on or about the 1st day of March, 1935, plaintiff herein refused to pay and definitely stated that the copartnership was not obligated to pay the interest."

This allegation was found to be true.

Respondent contends that this finding does not allege a debt due by the copartnership but refers to a mere moral obligation, and further suggests that this court should so interpret the finding under the rule that "every intendment and presumption not contradicted by or inconsistent with the record on appeal must be indulged in favor of the orders and judgments of superior courts." (2 Cal.Jur., p. 852, § 499.)

To apply this rule, this court must assume that counsel for respondent performed an idle act by inserting this allegation in his answer and carrying it forward into his findings, as moral obligations have no place in these proceedings. We cannot perceive but that to indulge in the presumption suggested by respondent would be "inconsistent with the record on appeal."

The second and third grounds of reversal urged by appellant are not tenable.

There is abundant evidence that appellant concealed from respondent important information which, if known, would have caused him to refuse to enter into the agreement of July 1, 1934. In addition to the $5,000 and the $3,000 withdrawals hereinbefore referred to, there were other large, unexplained withdrawals including sums of several hundred

dollars at a time, which were paid to a real estate firm from whom appellant was buying property. At the time of most of these withdrawals, a fiduciary relationship prevailed between the partners; respondent trusted appellant and relied upon his representations, express and implied, concerning the management of the business and the profits thereof.

Under the existing circumstances the trial court was justified in holding that the written agreement of July 1, 1934, was procured upon fraudulent representations made by appellant, which were relied upon by respondent; and the court's action in setting aside the agreement was entirely proper. (*Vance* v. *Supreme Lodge*, 15 Cal.App. 178 [114 P. 83].)

Appellant claims that respondent voluntarily withdrew from the partnership in May, 1932, but there is little to support that contention except his own testimony. Respondent continued to work with the firm and denied that he ever withdrew. In this he was supported by the other members of the family who testified that they were never informed of any change in the partnership relation. There is substantial evidence to support the finding that the partnership continued without interruption from July 1, 1929, until the filing of the action for dissolution.

We find little substantial merit in the fourth ground for reversal urged by appellant. The referee was confronted with an incomplete and imperfect set of books, which had been partially destroyed and mutilated while in the custody of the appellant. Where records were missing, he resorted to a system of computations based upon average receipts and expenditures, which was the best method he could pursue under the circumstances. If the results arrived at have been to appellant's disadvantage he cannot complain of a situation brought about by his own dishonest manipulation. (*Freeman* v. *Donohoe*, 65 Cal.App. 65 [223 P. 431].)

There is some merit in the final ground for reversal urged by appellant. That this is true has been indicated by observations previously made herein. The finding that there was a debt due to the mother of the partners is not completely supported by the evidence. There is evidence that she had advanced them considerable money, but the evidence as to the amount of these advances is very indefinite. At least the major portion of this debt had been outlawed. Respondent acknowledged the debt while appellant repudiated

it. This question should be correctly and definitely determined by the trial court and a proper finding made.

There was evidence as to capital contributions made by the partners, but no finding on that subject.

A finding that respondent accepted the $2,000 because appellant stated that that was the amount of his pilferings from the partnership, is not supported by the evidence. Appellant never admitted any pilferings, but claimed that he was the sole owner of the business and entitled to do as he pleased with its assets; and he did all he could to cover up his illegal withdrawals.

There is a finding that during a period when appellant was ill, he absented himself from the business, but nevertheless drew a salary of $250 per month. The evidence shows that notwithstanding his illness he spent quite a little time with the business, both at the office and at home, and managed to keep it running under severe handicaps. This finding should be eliminated.

There are some inaccuracies in other findings, but they are not of sufficient importance to merit discussion here.

The exhibit hereinbefore mentioned appears to cover a complete account of the cash transactions of the partnership, but neither in it nor in the other evidence nor in the findings does it appear that appellant was given a credit or offset for the $2,000 which he paid to respondent under the voided fraudulent agreement of July 1, 1934.

Some of the suggestions for correction or improvement of the record made herein are not so necessary as to require a reversal and might have been passed over under the rule of presumption on appeal hereinbefore cited, except for the fact that a reversal was to be ordered for other reasons.

The record in this case is voluminous and it seems neither necessary nor expedient to order a complete new trial. The judgment is reversed with directions to the trial court to vacate the findings and judgment, and to reopen the case for the taking of such additional evidence as may be necessary to prepare proper findings as indicated herein; also to direct the referee to take additional testimony and to file a supplemental report accounting for the partnership assets and debts, and making the other corrections hitherto suggested.

The trial court is further directed thereafter to file new

findings and a judgment which will conform to the views expressed in this opinion.

Thompson, J., and Adams, P. J., concurred.

Respondent's petition for a rehearing was denied February 10, 1943, and his petition for a hearing by the Supreme Court was denied March 11, 1943.