[Civ. No. 16648.   First Dist., Div. One.   May 14, 1956.]

JOSEPH W. DRISKILL, Appellant, v. TED R. THOMPSON
et al., Respondents.

Simeon E. Sheffey and J. Clark Benson for Appellant.

Marshall E. Leahy and John F. O'Dea for Respondents.

PETERS, P. J.—The plaintiff, Joseph W. Driskill, and defendants Ted R. Thompson and Stanley Kruse, on March 11, 1950, entered into an oral partnership agreement to conduct dances in a rented hall in San Francisco. Each partner contributed $500 to the project. It was agreed that the plaintiff should check the cash, act as a special police officer, supervise personnel, and also should perform some janitorial services. Defendant Kruse, it was agreed, should tend bar and perform some janitorial services. Defendant Thompson played in the band. Plaintiff and Kruse, by agreement, got paid a small salary for their work, Thompson getting paid an equal amount through the band.

By the middle of 1951 disagreements developed and there was some talk of, but no demand for, a dissolution. At a meeting of the partners in November, 1951, it was agreed that the partnership should seek a lease of the dance hall, and plaintiff agreed to handle these negotiations. This he did by securing, on December 20, 1951, a lease on the hall from the landlord in his own name. In addition, in November, 1951, he withheld $400 from the cash receipts of the partnership, claiming that he did so because of the imminency of dissolution. On December 28, 1951, plaintiff served on the other two partners a notice of dissolution effective January 1, 1952. Plaintiff took possession of the

physical assets of the partnership consisting of ice boxes purchased for $175, spotlights purchased for $68, an electric fan worth $500, and some miscellaneous items valued at twenty to thirty dollars. The other two partners kept the bank account which plaintiff was informed had in it 400 plus dollars. As of January 1, 1952, an accountant computed that plaintiff's partnership interest was worth $288.24, while defendants' interest was computed at $688.24 each. The difference of $400 between these interests was because of the $400 withdrawn by plaintiff. An expert fixed the value of the good will and leasehold interest at $11,520.

On January 4, 1952, plaintiff filed this action for an accounting after dissolution and defendants cross-complained for the same relief. The trial court found that the good will of the partnership was valued at $11,520; that on December 24, 1951, plaintiff converted the going concern and good will to his own use and benefit, thereby breaching the partnership agreement and causing a dissolution; that by reason thereof each defendant was damaged in the sum of $3,666.67.* Judgment was entered accordingly. Plaintiff appeals.

Although the judgment was not entered until December 1, 1954, a premature notice of appeal had been filed on October 29, 1954, which was after rendition of the judgment but before its entry. Such premature notice was effective to perfect the appeal. (Rule 12(a), Rules on Appeal; *Estate of Lopus*, 12 Cal.2d 651 [86 P.2d 818]; *Phillips* v. *Phillips*, 41 Cal.2d 869 [264 P.2d 926]; see also *Larrus* v. *First Nat. Bank*, 122 Cal.App.2d 884 [266 P.2d 143].)

Appellant's first major point is that prejudicial error was committed by the trial court in failing to take a complete accounting. In this connection appellant urges that the judgment is not based on the issues made by the pleadings, that the findings are not supported by the pleadings or the evidence, and that an accounting is a condition precedent to an award of damages in favor of one partner against another. There is some merit in appellant's position. The pleadings clearly set forth opposing causes of action for an accounting. The case was tried on this theory. But the trial court made no findings as to the assets in the hands of the partners, nor as to the capital balance of each partner. The only basic finding of the trial court is that the partnership was a going concern with a good will valued at $11,520,

---

*This was a miscalculation, as will later appear.

and that such good will was converted by appellant, causing damage to defendants. There is no finding at all as to the value of the personal property in the hands of appellant although he testified that he took over these physical assets which he valued at $763. Admittedly, respondents retained the bank account which totaled $908.94. No findings were made as to these matters. Thus, the trial court did fail to make a complete accounting. It is a general rule that until the affairs of a partnership are wound up, the claim of a partner is equitable and can only be enforced in an accounting action, and that no personal judgment can be entered in such an action until all partnership assets have been converted into money, the debts paid and a final balance ascertained. (*Hooper* v. *Barranti,* 81 Cal.App.2d 570 [184 P.2d 688]; *Clark* v. *Hewitt,* 136 Cal. 77 [68 P. 303]; *Olmo* v. *Olmo,* 56 Cal.App.2d 590 [133 P.2d 866]; *Nakamura* v. *Kondo,* 65 Cal.App. 211 [223 P. 425].) The rule is, however, not inflexible. █ One important exception was stated as follows in *Wilson* v. *Brown,* 96 Cal.App. 140, 143 [273 P. 847]: "But while 'in general a judgment may not be entered against a partner in a suit for an accounting until all of the assets have been marshaled and made to bear the burden of the copartnership liabilities, in cases where there are no liabilities to settle, except as between the partners themselves, such course is not necessary.' (*Shuken* v. *Cohen,* 179 Cal. 279 [176 P. 447].) *Where, as in this case, some of the partners have excluded another and have appropriated the partnership property to their own use,* the latter may treat the matter as a conversion and, without any accounting or disposition of the former partnership assets, sue the offending partners and recover against them a personal judgment in the amount of his damage." (Italics added.)

█ Now how do these rules apply to the present case? Our case is clearly one for an accounting. The judgment is based on a conversion. It would appear that the findings and judgment are not within the issues framed by the pleadings. Treated as an accounting action, as already pointed out, there was a failure to find on a material issue, the value of the tangible assets, cash and capital contributions of the partners. Thus, it would seem clear that, although the court had the power under the rule announced in *Wilson* v. *Brown,* *supra,* to award a personal judgment for the value of partnership property converted, it was error to do so without a full accounting of the property of the partnership.

But was this error prejudicial within the meaning of article VI, section 4½, of the Constitution? That depends on the facts. Here appellant admits that he took possession of physical assets valued at $763. At this time his capital interest was but $288.24. The capital interests of respondents together amount to $1,376.48, while the only asset they possessed was $908.94 in the bank account. Thus, before considering the converted good will, appellant had assets in his possession in excess of his capital contribution. Thus, the failure of the trial court to take an accounting of the physical assets and bank account actually inured to the benefit of appellant. In truth, the only ones injured by the failure to take the accounting were respondents, and they have not appealed. The error being favorable to appellant he is in no legal position to complain. (*Walker* v. *Etcheverry*, 42 Cal.App.2d 472 [109 P.2d 385].)

█ Appellant challenges the sufficiency of the evidence to support the finding that he converted partnership property and thereby breached the agreement and caused a dissolution. The evidence clearly supports the finding of conversion. On December 20, 1951, prior to dissolution, plaintiff obtained a lease on the premises used by the partnership in his own name, eight days later served a notice of dissolution, and thereafter ran the dance hall as his own individual enterprise. Obviously, this evidence supports the finding of conversion.

█ Appellant next complains that there was no breach of the partnership agreement because, admittedly, this was a partnership at will, terminable at any time. Section 15029 of the Corporations Code provides: "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."

Section 15030 provides: "On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed."

The rights of retiring partners upon dissolution against the partner continuing the business are provided by section 15042 of the Corporations Code, which reads: "When any partner retires or dies, and the business is continued under any of the conditions set forth in Section 15041 (1, 2, 3, 5, 6),* or Section 15038 (2b) without any settlement of accounts

---

*(6) provides for the case herein—"When a partner is expelled and the remaining partners continue the business . . . without liquidation . . ."

as between him . . . and the person . . . continuing the business, unless otherwise agreed, he . . . may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest . . .''

The cross-complaint of respondents was not based on a claim of a breach of the partnership agreement but asserted rights under this section. Thus, the finding as to the breach was immaterial because the judgment can be sustained without it.

▉ Appellant next argues that a partnership dissolvable at will can have no good will, because, so it is urged, such can exist only in a going business. Appellant confuses the partnership with the business of operating a dance hall. The operation of the dance hall was a business whether operated as a partnership, by individuals, or by a corporation. The continuance of that business created a good will regardless of who continued to operate it. A business, together with its good will, may continue regardless of the form of organization used to conduct it. Appellant continued to operate that business and to capitalize on the good will of that business as a going concern. This was an asset of the partnership which he was using for his own benefit.

▉ There was an error made in computing the value of the good will. A qualified C.P.A. and attorney testified that the good will should be computed at twice the partnership's excess earnings as shown by its books, and that so computed the good will was valued at $11,520. The trial court so found. That finding is supported. Dividing that value by three gives $3,840 as the value of each partner's interest in that good will. The court, however, fixed each respondent's damages at $3,666.67 each. Just how this figure was determined does not appear. But, erroneous as it may be, it was less than respondents were entitled to, and appellant is in no legal position to complain.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 11, 1956.